# The People of the State of Illinois, Defendant in Error, v. Helen True, Plaintiff in Error.

1. PROSTITUTION AND PANDERING—*essential proof in prosecution for being inmate of house of ill-fame.* Before a conviction may be had on a charge of being an inmate of a house of ill-fame, the proof must establish that the house in question is in fact a house of prostitution.

2. PROSTITUTION AND PANDERING—*sufficiency of evidence on prosecution for being inmate of house of ill-fame.* In a prosecution on a charge of being an inmate of a house of ill-fame where two witnesses for the prosecution testified that they went to the house of defendant and found her and another woman present, that defendant asked which one wanted to go to bed, that they made some excuse and said they would return later, and no proof was made of the character of the inmates of the house by way of general reputation or otherwise, and there was no proof as to the number or general reputation of the men who visited the house and the evidence of defendant was to the effect that she was keeping boarders and that the other woman was assisting her with the housework and that the things testified to by the State's witnesses were untrue, the proof was insufficient to show that the house in question was a house of ill-fame.

3. PROSTITUTION AND PANDERING—*one act as constituting house of ill-fame.* One act of illicit intercourse is not sufficient to constitute a house a house of ill-fame.

4. CRIMINAL PROCEDURE—*sufficiency of newly-discovered evidence as grounds for new trial.* Where two vice inspectors testified in a prosecution on a charge of being an inmate of a house of ill-fame that they, together with a certain third person, went to defendant's house where the matters occurred upon which the prosecution was based and defendant's motion for a new trial presented the affidavit of such third person that he never knew the two witnesses for the State and that he never was at defendant's house, such evidence was not merely cumulative and, there being no laches shown to bar defendant from urging it as a ground for a new trial, the court erred in denying the motion.

5. CRIMINAL PROCEDURE—*failure of state's attorneys to follow up writ of error disapproved.* The practice of state's attorneys in not following cases taken up on writ of error disapproved.

Error by defendant to the County Court of Perry county; the Hon. J. G. VAN KEUREN, Judge, presiding. Heard in this court at the October term, 1924. Reversed and remanded. Opinion filed February 9, 1925.

L. A. CRANSTON, for plaintiff in error.

J. E. HARRIS, State's Attorney, for defendant in error.

MR. JUSTICE BOGGS delivered the opinion of the court.

Plaintiff was found guilty by a jury in the county court of Perry county, on a charge of being an inmate of a house of ill-fame, and of keeping and maintaining a place for the practice of prostitution. Motions for a new trial and in arrest of judgment, made by plaintiff in error, were overruled by the court. The second count of the information, which charged the keeping and maintaining of a place for the practice of prostitution, was nolled, and judgment was entered on the first count. Plaintiff in error was fined $200 and costs, and prosecutes this writ of error to reverse said judgment.

The principal ground relied on is that the evidence in the record is not sufficient on which to base the verdict and judgment, and for newly-discovered evidence.

The evidence on the part of the People is to the effect that on the night of July 21, 1923, two State vice inspectors, of the Department of Health and Hygiene of the State of Illinois, with one Clarence Lingle, whom said witnesses claim to have met on the streets of DuQuoin, testified that they went to the home of plaintiff in error; that they there found plaintiff in error and another woman called Margaret Murray; that plaintiff in error asked them which one of them wanted to go to bed; that they made some excuse for not going with them, and said they would return at eleven o'clock, but did not do so.

It follows as a matter of law that before plaintiff in error can be convicted of being an inmate of a house of ill-fame, the proof in the record must estab-

lish that the house in question is in fact a house of prostitution, bawdy-house or house of ill-fame, all of which terms mean practically the same thing.

Section 57a-1 of the Criminal Code [Cahill's Ill. St. ch. 38, ¶ 146] provides as follows:  .

"Any male or female person who is an inmate of a house of ill-fame or assignation, or place for the practice of fornication or prostitution or lewdness, or who shall solicit to prostitution in any street, alley, park or other place in any city, village, or incorporated town in this State, shall be fined not exceeding two hundred dollars, or imprisoned in the county jail or house of correction for a period of not more than one year, or both."

In *People v. Rice,* 277 Ill. 521, the court in discussing the definition of prostitution and what constitutes a house of ill-fame, at page 523 says: "The following definition of prostitution as given by a recognized lexicographer was quoted and approved in *Bunfill v. People,* 154 Ill. 640: 'The act or practice of prostitution or offering the body to an indiscriminate intercourse with men; common lewdness of a female.' A house of ill-fame or assignation for the practice of prostitution is, therefore, a house where women prostitute themselves by offering their bodies to an indiscriminate intercourse with men. The term 'an inmate of a house of ill-fame or assignation for the practice of prostitution,' refers to one who is there for the purpose of plying her business." To the same effect is *People v. Ryberg,* 287 Ill. 195-201. In *People v. Berger,* 284 Ill. 47, the court at page 50 says: "Most authorities agree that on a prosecution for keeping such a house as this the State may prove the character of the inmates and frequenters of the house, and many courts hold it can prove the reputation of the house. (9 Am. & Eng. Ency. of Law.—2d Ed. —533; 9 R. C. L. 225, and cases cited.) The bad reputation of those who visit such a house is also generally held to be, in any view, competent evidence. (1 Whar-

ton on Crim. Evidence,—10th ed.—sec. 261, and cases cited.)"

In this case there was no proof of the character of the inmates of the house by way of general reputation for chastity or otherwise, and there was no proof as to the number or general reputation of the men who were seen to have visited said house.

The evidence on the part of plaintiff in error is to the effect that she was keeping boarders and that Margaret Murray was there assisting her in and about the household duties, and that the matters and things testified to by the two witnesses for the State were untrue.

The proof in the record is therefore insufficient to sustain a finding that the house in question is a house of prostitution. In fact, the count so charging was nolled after a verdict of guilty thereon had been returned by the jury.

The law is that one act of illicit intercourse is not sufficient to constitute a house a house of ill-fame. 2 McLain's Crim. Law, sec. 1138. While the jury, if they believed the People's witnesses, no doubt were satisfied that plaintiff in error and the said Margaret Murray were willing to prostitute themselves if occasion offered, at the same time there is not sufficient evidence in the record to constitute this house a house of ill-fame, and that being true, even though on this one occasion plaintiff in error had actually been guilty of illicit intercourse, it would not be sufficient to sustain the verdict and judgment.

While ordinarily cases are not reversed for the refusal of a trial court to grant a new trial for newly-discovered evidence, still where the new evidence, if true, is of a conclusive character, as in this case, a new trial should be granted. The man Lingle, referred to by the People's witnesses, made affidavit that he never knew the two witnesses who testified on behalf of the People, as vice inspectors, and further stated that he had never been at the house in question.

This evidence is not merely cumulative, but is of a conclusive character. This being true, and as the record discloses that plaintiff in error should not be barred from urging said testimony as a ground for a new trial by reason of laches, we hold that the court erred in not granting a new trial therefore.

No brief was filed by the state's attorney, but inasmuch as this is the People's case, we deem it best to pass on the case on the merits. A practice is apparently growing up, on the part of state's attorneys in several of the counties of this district, of failing to follow cases that are taken up on writ of error. We want to say in this connection that we do not approve of this practice and believe that cases should be prosecuted on writ of error as well as in the trial court.

For the reasons above set forth, the judgment of the trial court will be reversed and the cause will be remanded.

*Reversed and remanded.*